UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARA JAHANGIRI,<br><br>   Plaintiff,<br> v.<br><br>U.S. DEPARTMENT OF STATE, *et al.*,<br><br>   Defendants. | Civil Action No. 23-3029 (CKK) |

**MEMORANDUM OPINION**
(July 15, 2024)

On October 11, 2023, Plaintiff Sara Jahangiri filed a [1] Complaint seeking a judgment compelling the Secretary of State Antony Blinken and the United States Department of State (together, "Defendants"), to render a decision on her K-1 nonimmigrant visa application, pursuant to the Administrative Procedure Act's ("APA") bar on "unreasonabl[e] delay." 5 U.S.C. § 706(1).  Now pending before the Court is Defendants' [6] Motion to Dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Upon review of the briefing,[1] the relevant legal authority, and the record as a whole, the Court shall **GRANT** Defendants' [6] Motion to Dismiss and **DISMISS** Plaintiff's [1] Complaint in its entirety.

**I.   BACKGROUND**

**A.  Factual Background**

Plaintiff Sara Jahangiri is a citizen of Iran who is engaged to a United States citizen.

---

[1] The Court's consideration has focused on the following:
- Plaintiff's Complaint ("Compl."), ECF No. 1;
- Defendants' Motion to Dismiss ("Defs.' Mot."), ECF No. 6;
- Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 10; and
- Defendants' Reply in Support of the Motion to Dismiss ("Defs.' Reply"), ECF No. 11.

1

Compl. ¶ 8. In June 2021, her fiancé filed an I-129F, Petition for Alien Fiancé(e), with the United States Citizenship and Immigration Services, which was approved in September 2022. *Id.* ¶¶ 9, 11. In December 2022, Plaintiff submitted a K-1 nonimmigrant visa application. *Id.* ¶ 12. Plaintiff appeared for an interview on January 19, 2023 at the United States Embassy in Ankara, Turkey. *Id.* ¶ 13. After the interview, Plaintiff received a notice informing her that her application had been refused for administrative processing and that Defendants would notify her by email when processing had been completed. *Id.* ¶ 14. On January 20, 2023, Defendants sent Plaintiff an email requesting that Plaintiff complete and submit form DS-5535 with supplemental questions, which she did on January 24, 2023. *Id.* ¶ 15. Since then, both Plaintiff and her fiancé have inquired as to the status of her application on numerous occasions, and her application has remained in administrative processing. *Id.* ¶¶ 16–18.

### B. Procedural History

In May 2023, Plaintiff filed an action seeking a judgment compelling a decision on her visa application pursuant to the APA. *See Jahangiri v. U.S. Dep't of State*, No. 23-1487 (CKK), 2023 WL 5174305, at *1 (D.D.C. Aug. 11, 2023). Plaintiff alleged that the delay in adjudicating her application "has caused her and her fiancé... to suffer significant, ongoing harm in that they remain in legal limbo as to whether they are able to start their lives together as a couple in the United States," and she argued that Defendants' delay in adjudication was unreasonable under the APA. *Id.* at *1. The Court *sua sponte* dismissed Plaintiff's complaint on August 11, 2023. *Id.* at *5.

In October 2023, Plaintiff filed the current action alleging the same harm as in her previous lawsuit. Compl. ¶ 19. Plaintiff added that she is now pregnant, that it is devastating for her fiancé to be separated from his child, and also she does not wish to give birth to her U.S. citizen child in Iran. *Id.* ¶¶ 27–28. Her fiancé may not travel to Iran to visit his child, once born, nor may he move

to Iran because "his life is established [in the U.S.], and there is No Travel Advisory for US citizen traveling to Iran." *Id.* ¶ 42. As she did previously, Plaintiff argues that Defendants' delay in adjudication is unreasonable under the Administrative Procedure Act. *Id.* ¶ 34 (citing 5 U.S.C. § 706(1)). Through this action, Plaintiff seeks to compel Defendants to adjudicate her visa application. *See generally* Compl.

Defendants filed the pending Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim. Defs.' Mot. at 1.

## II.  LEGAL STANDARD

### A. Motion to Dismiss for Lack of Jurisdiction

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91–92 (D.D.C. 2020) (JDB); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005).

However, the "'factual allegations in the complaint … will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (RMU) (citation

3

omitted). A court need not accept as true "'a legal conclusion couched as a factual allegation'" or an inference "'unsupported by the facts set out in the complaint.'" *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Motion to Dismiss for Failure to State a Claim

Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint is not sufficient if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (PLF).

When considering a Rule 12(b)(6) motion, courts may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal quotation marks omitted) (quoting *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (RBW); *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009)). The court may also consider documents in the public record of which the court may take judicial notice. *Abhe &*

*Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## III.  DISCUSSION

Defendants present various arguments for dismissal of Plaintiff's Complaint.  First, they argue that certain Defendants are improperly named as Defendants.  Second, they argue that consular nonreviewability precludes judicial review.  Defendants then argue that Plaintiff's claim fails because she cannot identify a discrete agency action that a consular officer is required to take.  Finally, they argue that even if those grounds do not foreclose relief, Plaintiff's mandamus claim fails on the merits and therefore should be dismissed for failure to state a claim.  The Court now addresses these arguments in turn.

### A.  Improper Defendants

Defendants argue that the Department of State and Secretary of State should be dismissed as those parties cannot adjudicate a visa application.  Defs.' Mot. at 5.  In support, Defendants rely on the proposition that "consular officers [have] 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  *Id.* (citing *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999))).  However, Ms. Jahangiri is not challenging a consular officer's adjudication of her visa application; she is challenging the alleged delay of her application's adjudication.  *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 233 (D.D.C. 2021) (APM); *see also Al-Gharawy*, 617 F. Supp. 3d at 10 ("Control over a consular officer's visa *determination* … is not the same as control over the *timing* by which the consular officer considers the applications presented to her.") (emphasis in original).  Courts in this jurisdiction reject the same argument that Defendants have raised here.  *See, e.g.*, *id.*; *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 90 (D.D.C. 2022) (RC).  Therefore, the Court finds that the Secretary of State and

5

the Department of State are properly named defendants.

### B. Doctrine of Consular Non-Reviewability

Defendants next argue that Ms. Jahangiri's claims fail under the doctrine of consular non-reviewability. Defs.' Mot. at 6–10. This doctrine provides that "a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno*, 197 F.3d at 1159. The doctrine of consular non-reviewability derives from "the political nature of visa determinations and… the lack of any statute expressly authorizing judicial review of consular officers' actions." *Id.* The scope of the doctrine also aligns with Congress's decision to commit the adjudication of visa applications exclusively to consular officers. *See* 8 U.S.C. §§ 1201(a) & (g); *see also* 8 U.S.C. § 1361.

For nearly a century, courts in this jurisdiction have applied the doctrine of consular non-reviewability and "refused to review visa decisions of consular officials." *Saavedra Bruno*, 197 F.3d at 1159–60 (collecting cases). The United States Court of Appeals for the District of Columbia Circuit recently reaffirmed that the doctrine of "[c]onsular non-reviewability shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao Thai Rest.*, 985 F.3d at 1024. However, courts of this jurisdiction have held that the doctrine does not apply where "plaintiffs 'do not seek judicial review of a consular decision, but instead seek a final decision on their applications.'" *Didban v. Pompeo,* 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (CRC) (quoting *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Pompeo*, No. 18-01388 (TSC), 2019 WL 367841, at *10 (D.D.C. Jan. 30, 2019)). This includes where a visa application remains in administrative processing. *See, e.g.*, *id.* at 172, 174; *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98–99 (D.D.C. 2020) (ABJ) (refusing to apply the consular non-reviewability doctrine where the "visa application remains in administrative processing"

6

where the government actively seeks additional information from the applicant); *Nine Iraqi Allies*, 168 F. Supp. 3d at 290 (holding that the consular non-reviewability doctrine does not apply where the applicant's tracker status remains in administrative processing); *Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d at 11–17 (collecting cases and holding the same).

Here, the doctrine of consular non-reviewability does not preclude the Court from reviewing the adjudication of Ms. Jahangiri's visa application, as it remains in administrative processing. On January 19, 2023, the consular officer who reviewed Ms. Jahangiri's documents alerted her that her application was "refused under section 221(g) of the U.S. Immigration and Nationality Act" because it was "undergoing administrative processing." Compl. Ex. F at 1, ECF No. 1-2. After Ms. Jahangiri submitted additional personal information on January 24, 2023 per the Embassy's request, the Embassy informed her that her "[c]ase is currently in administrative processing." Compl. Ex. G at 3, ECF No. 1-2. Further, in response to the inquiry for a status update from Ms. Jahangiri's fiancé, the Embassy indicated that the case was "still pending necessary administrative processing." Compl. Ex. H at 1, ECF No. 1-2. As in other cases where courts have deemed the consular non-reviewability doctrine to not apply, Ms. Jahangiri's application clearly remains in administrative processing per the express language of the consular officials. Accordingly, the Court holds that the consular non-reviewability doctrine does not bar judicial review of Ms. Jahangiri's claims.

C. **Non-discretionary Duty**

Next, Defendants contend that Plaintiff's claim fails because there is no discrete agency action that a consular officer is required to take. Defs.' Mot. at 10.

As the Supreme Court has held, "a claim [for unreasonable delay] under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it

is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original).  As other courts have held, "[g]ranting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action." *Khazaei v. Blinken*, No. 23-1419 (JEB), 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023).  Furthermore, taking such an action is required by both the APA and the Department's own regulation, and is to be done within a reasonable time.  *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (noting that 5 U.S.C. § 555(b) "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time'"); *Vulupala*, 438 F. Supp. 3d at 100 (concluding that "[g]ranting or refusing a final visa application is a mandatory agency action" under 22 C.F.R. § 41.106).

Therefore, the Court finds that Defendants' arguments again fail.

### D. Unreasonable Delay

Finally, Defendants argue that even if the grounds argued above do not foreclose relief, Plaintiff's mandamus claim fails on the merits and therefore should be dismissed for failure to state a claim.  Defs.' Mot. at 18.  Ms. Jahangiri argues, *see* Pl.'s Opp'n at 14, that Defendants have not adjudicated her application "within a reasonable time" as required by the Administrative Procedure Act, 5 U.S.C. § 555(b), and that the Court must "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).  Although a court may order an agency "to perform a [mandatory] act, [i.e.,] to take action upon a matter," a court may not decide "how [the agency] shall act." *Norton*, 542 U.S. at 62.

To determine whether a plaintiff has sufficiently alleged that agency action has been "unreasonably delayed," courts apply the familiar "*TRAC*" factors laid out in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (internal quotation marks omitted); *see also Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017) (RJL) (applying *TRAC* factors to claim for mandamus relief).  Plaintiff points to case law from the United States Court of Appeals for the Ninth Circuit for the idea that "this Court need not assess the TRAC factors." Compl. ¶ 36.  However, as the Court informed Plaintiff in its earlier opinion, *see Jahangiri*, 2023 WL 5174305, at *2, this Ninth Circuit case is not binding precedent, and it is the law of this Court to apply *TRAC*.  Whether a delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part… upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102. The Court now considers the various factors in turn.  The Court notes that most of the below discussion mirrors the analysis presented in its opinion addressing Plaintiff's earlier lawsuit, *see generally Jahangiri*, 2023 WL 5174305, as the only material changes are that Plaintiff is now pregnant, additional time has

elapsed while her application remains in administrative processing, and Plaintiff has presented additional argumentation in response to a dispositive motion, whereas the earlier opinion dismissed her case *sua sponte*.

### 1. *TRAC* Factors One and Two

The D.C. Circuit has explained that the first *TRAC* factor—the time agencies take to make decisions must be governed by a "rule of reason"—is the "most important," although it is generally reviewed with the second *TRAC* factor as well. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The inquiry centers on "whether the agency's response time… is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (JEB). Because Congress has provided no statutory timeframe indicating how quickly it requires the State Department to adjudicate and re-adjudicate visa applications, *TRAC* factor two is inapplicable. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka,* 246 F. Supp. 3d at 153–54 (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").

In general, courts in this jurisdiction have regularly found that the Government applies a "rule of reason" to the review of visa petitions by adjudicating applications in the order they were filed. *See, e.g., Muvvala v. Wolf*, No. 20-02423 (CJN), 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC factor."). Courts in this jurisdiction often look to the length of delay as a rough yardstick to determine whether that "first-in, first-out" rule is, in fact, being applied.

Plaintiff Jahangiri had her visa interview in January 2023 and, since then, her application has remained in administrative processing. Compl. ¶¶ 13–18. Plaintiff argues that this delay is

10

unreasonable: it was a delay of nine months at the time of the filing of her Complaint, *id.* ¶ 34, twelve months at the time Defendants filed their Motion to Dismiss, *see* Defs.' Mot, and now eighteen months at the writing of this opinion. However, courts in this jurisdiction routinely find that delays of numerous *years* are not unreasonable. *See, e.g.*, *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (finding that a delay of forty-two months was "insufficient to warrant emergency relief in this district"); *Pourshakouri v. Pompeo*, No. 20-0402 (RJL), 2021 WL 3552199, at *8–9 (D.D.C. Aug. 11, 2021) (finding delay of forty-four months not unreasonable); *Varghese v. Blinken*, No. 21-2597 (CRC), 2022 WL 3016741, at *5 (D.D.C. July 29, 2022) (finding delay of "around four years" does "not warrant judicial intervention, standing alone"); *Arab v. Blinken*, No. 21-1852 (BAH), 2022 WL 1184551, at *8 (D.D.C. Apr. 21, 2022) (ruling that a thirty-month delay was not unreasonable); *see also Yavari v. Pompeo*, No. 2:19-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."). The time period of now eighteen months for which Ms. Jahangiri's application has been in administrative processing is well within the bounds of that which other courts have found reasonable.

Plaintiff next argues that claims of unreasonable delay for administrative processing are different than other "'immigration processing delay' cases," so the lengths of delay should not be compared between the two categories. *See* Pl.'s Opp'n at 16–18. Plaintiff implies that this factual divergence means that the delay in Plaintiff's case cannot be justified. However, the difference is of no import. There are also numerous cases in which courts consider lengthy delays of administrative processing after attending an interview to not be unreasonable. *See, e.g.*, *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155 (D.D.C. 2022) (JEB).

Plaintiff then argues that the delay shows Defendants' failure to process applications in accordance with the first-in, first-out methodology. Pl.'s Opp'n at 18–19. Plaintiff argues that applications in administrative processing are not addressed in conformity with this rule of reason because such rule would require these applications to be "concluded before additional visas are adjudicated, prioritizing them at the front of a queue ahead of any newly considered applications." *Id.* at 18–19. Plaintiff does not provide any proof to support this argument. Moreover, even if Plaintiff did submit evidence in support of this argument, it ignores the fact that applications have different levels of complexity and present different challenges. A later filed visa application being adjudicated sooner than Plaintiff's does not, without more, support the contention that Defendants are not adhering to the first-in, first-out rule, as different applications may require different resources and time. *Cf. Khoshrou v. Blinken*, No. 22-cv-2859 (CKK), 2023 WL 4930086, at *7 (D.D.C. Aug. 2, 2023) (rejecting the argument that other visa applicants being interviewed after but adjudicated before the plaintiff meant that defendants were not adhering to the first-in, first-out rule).

In sum, the Court finds that the first and second *TRAC* factors do not lend credence to Plaintiff's claims. The time period for which Ms. Jahangiri's application has been in administrative processing is not unreasonable. As *TRAC* factor one is considered the "most important" factor, this finding weighs heavily in the Court's ultimate holding.

### 2. *TRAC* Factor Four

Next, *TRAC* factor four requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80.

Defendants contend that this factor weighs heavily in their favor, Defs.' Mot. at 23, while Plaintiff argues the opposite, Pl.'s Opp'n at 22–24.

Granting Plaintiff the relief she seeks would merely "reorder a queue of applicants seeking adjudication." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (BAH).  The D.C. Circuit has emphasized the importance of considering "competing priorities" in assessing the "reasonableness of an administrative delay," even "refus[ing] to grant relief when all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue [would] simply move[] all others back one space and produce[] no net gain." *Mashpee Wampanaoag Tribal Council, Inc.*, 336 F.3d at 1100 (quoting *In re Barr*, 930 F.2d 72, 75 (D.C. Cir. 1991)); *see also Ghadami v. U.S. Dep't of Homeland Sec.*, No. 19-00397 (ABJ), 2020 WL 1308376, at *9 (finding that "expediting review in [the plaintiff's] case would merely direct government resources from the adjudication of other waiver applications").  Any such order would plainly interfere with the agency's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr*, 930 F.2d at 76.

Plaintiff argues that Defendants operate from the "assum[ption]… that the Plaintiff's Visa Application is not already at the 'front of the line' or 'completely ignored' by the Defendants." Pl.'s Opp'n at 23.  If her application were at the front of the line, then Defendants would be adjudicating Plaintiff's application next, and there is no need to compel them to do so.  And there is no evidence that Defendants are ignoring Plaintiff's application.  Contrarily, Plaintiff attaches as an exhibit to her Complaint a message from the U.S. Embassy in Ankara, Turkey, which states the Embassy would notify her "as soon as this process is completed," indicating that the process is ongoing.  Compl. Ex. H at 1, ECF No. 1-2.  Expediting review of Plaintiff's application would merely redirect resources from other cases, which is inappropriate to compel. *Akrayi v. Dep't of State*, Civ. A. No. 22-1289 (CRC), 2023 WL 2424600, at *4 (D.D.C. Mar. 9, 2023) (collecting

cases).

Courts in this jurisdiction, including *this* Court, routinely decline to grant relief that would place one prospective visa applicant ahead of others.  *See, e.g.*, *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (TJK) ("This factor not only favors Defendants, but ends up altogether dooming Plaintiffs' claims of unreasonable delay."); *Verma v. USCIS*, No. 20-3419 (RDM), 2020 WL 7495286, at *9 (D.D.C. Dec. 18, 2020); *Dehghanighanatghestani v. Mesquita,* No. 22-2595 (CKK), 2022 WL 4379061, at *7 (D.D.C. Sept. 22, 2022); *Pushkar v Blinken*, No. 21-2297 (CKK), 2021 WL 4318116, at *7 (D.D.C. Sept. 23, 2021); *Desai v. USCIS*, No. 20-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021); *Manzoor v. USCIS*, No. 21-2126 (CKK), 2022 WL 1316427, at *5–*6 (D.D.C. May 3, 2022).  The Court will now do the same here, finding that the fourth *TRAC* factor weighs strongly against Plaintiff.

### 3. *TRAC* Factors Three & Five

The third and fifth *TRAC* factors are often considered together and require the Court to consider Plaintiff's interests, health, and welfare.  *Ghadami v. U.S. Dep't of Homeland Sec.,* No. 19-00397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020).

Plaintiff Jahangiri alleges that her "welfare is clearly at stake," as "failure to adjudicate leaves [her] in administrative uncertainty, legal limbo and knowledge that eventual denial of her Application could result in her being unable to start a life with her fiancé(e) [sic] in the United States."  Compl. ¶ 35.  She further alleges that she "will suffer irreparable harm if her Application is not promptly adjudicated," particularly because she is pregnant and will have to give birth to her U.S. citizen child in Iran.  *Id.* ¶¶ 27–28, 42.  She continues that her fiancé might not travel to Iran to visit his child, once born, nor might he move to Iran because "his life is established [in the U.S.], and there is No Travel Advisory for US citizen traveling to Iran."  *Id.*

¶ 42.

The Court is sympathetic to these concerns and reminds the Government that it must treat Plaintiff's case with "the sense of urgency one would expect when familial interests are at stake." *Skalka*, 246 F. Supp. 3d at 154. The delay in adjudicating Plaintiff's K-1 visa has forced her "to endure a prolonged and indefinite separation" from her fiancé, which is "undeniably significant." *Didban v. Pompeo,* 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (CRC). At the same time, the Court must also be mindful that "many others face similarly difficult circumstances as they await adjudication of their visa applications." *Mohammed v. Blinken*, No. 20-3696 (TNM), 2021 WL 2866058, at *6 (D.D.C. July 8, 2021); *see also Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021) (TNM) ("While the Court does not doubt that [plaintiff] has an interest in prompt adjudication, so too do many others facing similar circumstances").

On balance, the Court does find that Plaintiff will face significant consequences without intervention, and *TRAC* factors three and five lean in her favor. *See, e.g., Zandieh v. Pompeo*, No. 20-919 (JEB), 2020 WL 4346915, at *5 (D.D.C. July 29, 2020) (third and fifth factors favored plaintiffs due to harm from family separation); *Ghadami*, 2020 WL 1308376, at *9 (third and fifth *TRAC* factors favored visa applicant who alleged that he was "irrevocably harmed" by separation from his children and wife due to government's delay in rendering a decision on whether he was entitled to waiver of immigration restrictions in Presidential Proclamation 9645); *Penn v. Blinken*, No. 21-1055 (TJK), 2022 WL 910525, at *6 (D.D.C. March 29, 2022).

### 4.  *TRAC* Factor Six

Finally, the sixth *TRAC* factor states that a "[c]ourt need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *Ghadami*, 2020 WL 1308376, at *9. The Court "must determine whether the agency has acted in bad faith

in delaying action." *Gona v. U.S. Citizenship & Immigr. Servs.*, No. 20-3680 (RCL), 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021).

Here, Plaintiff has not alleged any bad faith on the part of Defendants. *See generally* Compl. As *TRAC* directs, however, the lack of plausible allegations of impropriety does not weigh against Plaintiff, and therefore does not alter the Court's analysis. *See Palakuru*, 2021 WL 674162, at *6 (considering the sixth TRAC factor "neutral" even though the plaintiff alleged that the government had engaged in "purposeful delay" and "artificially inflate[d] [] processing times").

* * *

Altogether the Court finds that, based on an analysis under the *TRAC* factors, Plaintiff Jahangiri cannot prevail on the facts alleged in her Complaint to make out a claim for unreasonable delay of her visa application. Therefore, the Court concludes that Plaintiff's Complaint must be dismissed for failure to state a claim under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** Defendants' Motion to Dismiss and **DISMISS** Plaintiff's [1] Complaint in its entirety. An appropriate order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
